UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BROOM, | No. 2:15-cv-2393-EFB |
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties' cross-motions for summary judgment are pending. Also pending is the court's September 1, 2016 order to show cause why sanctions should not be imposed for the Commissioner's failure to timely file her motion for summary judgment. ECF No. 19. For the reasons discussed below, the order to show cause is discharged, plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the matter is remanded for further proceedings.

/////

/////

1

I.  ORDER TO SHOW CAUSE

The court approved the parties' stipulation to extend the date for the Commissioner to file her cross-motion for summary judgment and ordered the Commissioner to file her motion by August 15, 2016.  ECF No. 18.  The Commissioner failed to do so and was ordered to show cause why sanctions should not be imposed for violation of that order.  ECF No. 19.  In response, counsel for the Commissioner explains that the failure to timely file the motion was due to a calendaring error.  ECF No. 20.  Counsel also has taken responsibility for the error, apologized for the violation of the order, and assured the court that additional measures have been implemented to ensure compliance with court orders.  *Id.*

In light of those representations, the order to show cause is discharged and no sanctions are imposed.

II. BACKGROUND

Plaintiff filed applications for a period of disability, DIB, and SSI, alleging that he had been disabled since December 15, 2011.  Administrative Record ("AR") 176-189.  Plaintiff's applications were denied initially and upon reconsideration.  *Id.* at 113-118, 120-125.  On December 11, 2013, a hearing was held before administrative law judge ("ALJ") Dante M. Alegre.  *Id.* at 28-64.  Plaintiff was represented by counsel at the hearing, at which he and a vocational expert ("VE") testified.  *Id.*

On May 22, 2014, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.[1]  *Id.* at 15-23.  The ALJ made the following

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?

specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2014.

2. The claimant has not engaged in substantial gainful activity since December 15, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD) and pancreatitis (20 CFR 404.1520(c) and 416.920(c)).

   * * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

   * * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: lift and/or carry twenty pounds occasionally and ten pounds frequently; sit, stand, or walk for six hours each in an eight-hour day; but should avoid concentrated exposure to fumes, dusts, gases, and odors.

   * * *

6. The claimant is capable of performing past relevant work as a recycle laborer, as actually performed, and warehouse supervisor, as described in the DOT. This work does not

---

> If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>     Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>     Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>     Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

3

>require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
>* * *
>
>7. The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2011, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

*Id.* at 17-23.

Plaintiff's request for Appeals Council review was denied on September 22, 2015, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-6.

### III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

/////

/////

IV.    ANALYSIS

Plaintiff argues that the ALJ erred by (1) rejecting his treating physician's opinion without providing legally sufficient reasons, and (2) finding that his past relevant work included positions as a recycle laborer and warehouse supervisor. ECF No. 16-1, at 9-15.

A. The ALJ Properly Rejected the Opinion of Plaintiff's Treating Physician

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester*, 81 F.3d at 834. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id*. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Plaintiff received medical treatment from Dr. Eleanor Bucaycay, a treating physician. On a form completed in support of plaintiff's claim for state disability benefits, Dr. Bucaycay indicated that plaintiff was unable to work between December 2011 and July 2012 due to pancreatitis and COPD. *Id*. at 257. Plaintiff's symptoms included persistent abdominal pain. *Id*.

Dr. Bucaycay also completed a medical source statement. AR 446-447. She opined that plaintiff could walk and stand for 4 hours in an 8-hour workday and lift and carry 20 pounds

1  occasionally, 25 pounds frequently, but that he had a maximum capacity to lift and/or carry was
2  20 pounds. *Id.* at 446. She indicated that these limitations were due to plaintiff's recurrent
3  pseudocyst, which required surgery; low back pain; and depression. *Id.* Dr. Bucaycay further
4  opined that plaintiff would require a cane for walking due to low back pain "as noted in x-ray."
5  *Id.* She also opined that plaintiff could sit for less than 6 hours in an 8-hour workday and would
6  need to change positions every 20 minutes "due to [his] back." *Id.* It was also her opinion that
7  plaintiff needed to alternate between sitting and standing every 2 hours, was limited to occasional
8  postural limitations, and was limited in fingering. *Id.* at 447.[2]

9  The record also contains opinions from Dr. J. Meeks and Dr. N.J. Rubaum, both non-
10 examining physicians. Dr. Meeks opined that plaintiff could lift 20 pounds occasionally and 10
11 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, sit for about 6 hours in
12 an 8-hour workday, and that he should avoid concentrated exposure to fumes, odors, dusts, gases,
13 and poor ventilation due to his COPD. *Id.* at 70-71, 79-80. Dr. Rubaum concurred with Dr.
14 Meeks's opinion. *Id.* at 93-94, 105-106.

15 In finding that plaintiff was not disabled, the ALJ accorded significant weight to Dr.
16 Meeks's opinion, while giving little weight to Dr. Bucaycay's opinion. AR 21. As Dr.
17 Bucaycay's examining opinion was contradicted by other medical opinions, the ALJ was required
18 to give specific and legitimate reasons, supported by substantial evidence, for giving it reduced
19 weight. *See Lester*, 81 F.3d at 830.

20 The ALJ provided multiple reasons for his rejection of Dr. Bucaycay's treating opinion.
21 The first is the ALJ's observation that Dr. Bucaycay's opinion was internally inconsistent, noting
22 that she opined that plaintiff could lift more weight frequently than he could occasionally. *Id.*
23 (Dr. Bucaycay specifically opined that plaintiff could lift 25 pounds frequently, but lift only 20
24 pounds occasionally). An ALJ is free to reject a treating physician's opinion that is internally
25 inconsistent. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999); *see also*
26 *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (finding that inconsistency in a doctor's

---

28  [2] Specifically, Dr. Bucaycay stated "fingering – able to but takes a long time." AR 447.

opinions, observations, and clinical notes "is a clear and convincing reason for not relying on the doctor's opinion."). The opinions as to ability to lift noted by the ALJ are clearly inconsistent and constitute a clear and convincing reason for discounting Dr. Bucaycay's opinion.

Plaintiff argues that the inconsistency is attributable to the check the box form utilized by Dr. Bucaycay, which provides 20 pound as an optional answer for occasionally lifting, but 25 pounds, instead of 20 pounds, as an optional answer for frequently lifting. Plaintiff contends that "if there had been a 20 pound checkoff, [Dr. Bucaycay] would have checked it, but 25 pounds was the closest to the 20" pounds. ECF No. 16-1 at 10. Plaintiff's argument, which appears pure conjecture, is belied by Dr. Bucaycay's responses to other questions on the form. The second question on the form asked Dr. Bucaycay to indicate how long plaintiff could stand and walk, in total, in an 8-hour workday. *Id*. at 446. The form provided three options: (1) less than 2 hours; (2) at least 2 hours; and (3) about six hours. *Id*. Dr. Bucaycay declined to check any of these options and instead handwrote in "4 hrs." *Id*. This shows Dr. Bucaycay felt free to add explanatory comments where appropriate and suggests that, contrary to plaintiff's contention, Dr. Bucaycay did not check 25 pounds simply because it was the best available option. In any event, the ALJ's finding that Dr. Bucaycay's opinion was internally inconsistent was reasonable and the court may not second-guess the ALJ's reasonable findings. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ also rejected Dr. Bucaycay's opinion because she did not cite to any objective medical findings to support the degree of the limitations assessed and failed to identify any impairment that could support the limitations to handling or fingering. AR 21. The ALJ further noted that Dr. Bucaycay's opinion was unsupported by the medical record, including her own treatment notes, which failed to demonstrate that she provided any treatment for plaintiff's low back pain or an impairment that would limit gross or fine manipulation. *Id*. at 21-22. An ALJ may reject a treating physician's opinion that is conclusory, brief, and unsupported by the record as a whole or objective medical findings. *Baston v. Comm'r Soc. Sec. Admin*, 359 F.3d 1190, 1195 (9th Cir. 2004). And, as noted, an ALJ may also reject an opinion that is inconsistent with the physician's own observations and treatment notes. *Bayliss*, 427 F.3d at (9th Cir. 2005).

1         Dr. Bucaycay expressed the opinion that plaintiff has severe limitations due to low back
2  pain. AR 446. However, her treatment notes, as well as medical records from other health care
3  providers, show no treatment for low back pain and contain only minimal references to plaintiff
4  experiencing such pain. Instead, the record reflects that plaintiff was generally treated for
5  abdominal pain caused by pancreatitis. In October 2011, plaintiff reported major depression and
6  left rib cage soreness. AR 380. He was admitted to the hospital in December 2011 due to severe
7  adnominal pain with symptoms consistent with pancreatitis likely caused by chronic alcohol
8  abuse. *Id*. at 283-284. In February 2012, he reported continuing abdominal pain. *Id*. at 335, 338,
9  511. In April 2012, he complained of abdominal "pain that is felt as a tightening that radiates to
10 his back." *Id*. at 299. In early 2013, plaintiff had his pancreatic cyst drained and reported that
11 his abdominal pain was "feeling much improved." *Id*. at 492, 496-498. However, in May 2013,
12 plaintiff reported experience abdominal pain and weight loss, which was suspected to be caused
13 by a pseudocyst compressing plaintiff's stomach. *Id*. at 462, 476. Similar observations were
14 made in September 2013. *Id*. at 451, 454.

15        A review of the medical records reveals only limited references to back pain. As noted
16 above, an April 2012 treatment note from Dr. Bucaycay indicated that plaintiff complained of
17 abdominal pain that radiated towards his back. *Id*. at 299. The record also contains treatment
18 notes from a Mental Health Admission Evaluation conducted in December 2011, which indicates
19 that plaintiff reported feeling pain in his stomach that moves to his back. AR 372-378. The
20 examining psychiatrist noted that plaintiff was tender over the center of his abdomen, which
21 radiated "more to back when pushing on the area." *Id*. at 378. Aside from these two treatment
22 notes, the medical records do not evidence a diagnosis or treatment for low back pain.
23 Nevertheless, Dr. Bucaycay assessed severe limitations due to low back pain.

24        The lack of medical evidence documenting a lower back impairment is significant given
25 that Dr. Bucaycay stated that her opinion was based on plaintiff's lower back pain "as noted on x-
26 ray." *Id*. at 446. As observed by the ALJ, "no X-ray was contained in the medical records
27 submitted from the Veteran's Administration (where Dr. Bucaycay works) and no treatment was
28 performed regarding low back pain." *Id*. at 18. Accordingly, the ALJ reasonably concluded that

1    Dr. Bucaycay's opinion that plaintiff suffered several limitations due to lower back pain was

2    inconsistent with medical record, including her own treatment notes.

3          The ALJ also rejected Dr. Bucaycay's opinion that plaintiff had limitations in fingering

4    because she did not cite to any evidence of this, nor provide any explanation for the limitation.

5    An ALJ may reject a treating physician's opinion that is unsupported by treatment notes and the

6    physician offers no objective medical findings to support his opinion. *See Tonapetyan v. Halter*,

7    242 F.3d 1144, 1149 (9th Cir. 2001). Plaintiff contends, however, that Dr. Bucaycay diagnosed

8    him with trigger finger and that this impairment supports her opinion that he has limitations in

9    performing fine manipulation. ECF No. 16-1 at 11.

10         Dr. Bucaycay, however, did not indicate that plaintiff's trigger finger was responsible for

11   causing limitations in manipulation. *See* AR 446-447. Furthermore, the medical records do not

12   demonstrate that this impairment caused such limitations. Dr. Bucaycay's treatment notes do

13   little more than indicate that plaintiff was diagnosed with trigger finger. *See*, *e.g.*, AR 309, 455,

14   498. For instance, a treatment record from September 2013 states that plaintiff's "Computerized

15   Problem List" includes a diagnosis for trigger finger, but the assessment and plan portion of the

16   treatment note makes no mention of this condition. *Id*. at 455-457. Other treatment notes from

17   Dr. Bucaycay fail to document complaints of pain, functional limitations, or treatment associated

18   with this impairment.

19         The record does contain a medical record from a plastic surgery consultation in June 2012

20   showing that plaintiff had triggering in his right middle finger that "occasionally" caused severe

21   pain. *Id*. at 514. The note does not, however, indicate whether the impairment imposed any

22   functional limitations. The record reflects that plaintiff's right trigger finger was treated with a

23   Kenalog injection, and it was noted that plaintiff needed to follow up in one month. *Id*. There is

24   no indication, however, that plaintiff ever followed up with the plastic surgeon, and Dr.

25   Bucaycay's subsequent treatment notes merely indicate that plaintiff's trigger finger was being

26   "monitored." *Id*. at 498, 513. The plastic surgeon also noted that plaintiff had previously had a

27   right trigger thumb, which was resolved by a cortisone shot without further treatment. *Id*. This

28   record merely demonstrates that plaintiff received medical treatment for his trigger finger that

1  was similar to treatment which proved successful in the past. Significantly, it does not
2  demonstrate that plaintiff had any limitation in manipulation. Thus, plaintiff's contention that his
3  diagnosis of trigger finger alone supports Dr. Bucaycay's finger limitation is unavailing.
4      Accordingly, the ALJ properly rejected Dr. Bucaycay's treating opinion.
5      B.  <u>The ALJ's Step-Four Finding is Not Supported by Substantial Evidence</u>
6      Plaintiff next argues that the ALJ erred by finding that plaintiff could perform past
7  relevant work. ECF No. 16-1 at 14-15.
8      At the fourth step of the sequential evaluation, the claimant bears the burden of
9  demonstrating that he can no longer perform his past relevant work "either as actually performed
10  or as generally performed in the national economy." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533
11  F.3d 1155 (9th Cir. 2008). "Although the burden of proof lies with the claimant at step four, the
12  ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v.*
13  *Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). This requires the ALJ to compare plaintiff's RFC
14  to the physical and mental demands of plaintiff's past relevant work.
15      "Past relevant work" is work that a claimant has "done within the past 15 years, that was
16  substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20
17  C.F.R. §§ 404.1560(b), 416.960(b); *see also* 20 C.F.R. §§ 404.1560(a) 416.965(a). A claimant's
18  work may be substantial even if it is done on a part-time basis or if the claimant does less, gets
19  paid less, or has less responsibility than when the claimant worked before. 20 C.F.R.
20  §§ 404.1572(a), 416.972(a). However, a claimant's earnings "can be a presumptive, but not
21  conclusive, sign of whether a job is substantial gainful activity." *Lewis v. Apfel*, 236 F.3d 503,
22  515 (9th Cir. 2001). "Therefore, if the average monthly earnings are below specified amounts
23  designated by the Social Security Administration, 'the claimant has carried his or her burden
24  unless the ALJ points to substantial evidence, aside from earnings, that the claimant has engaged
25  in substantial gainful activity.'" *Montoya v. Colvin*, 649 F. App'x 429, 431 (9th Cir. 2016)
26  (quoting *Lewis*, 236 F.3d at 515).
27      At the administrative hearing, the VE testified that plaintiff previously worked as a
28  recycle laborer, which is categorized by the Dictionary of Occupational Titles ("DOT") as

1    medium work, but that plaintiff actually performed the position at a light exertional level. AR 58.
2    The VE also testified that plaintiff's prior work included a warehouse supervisor position, which
3    is described by the DOT as light work, but that plaintiff performed the job at a medium exertional
4    level. *Id*. Relying on this testimony, the ALJ determined that plaintiff was not disabled because
5    he maintained the RFC to perform his past relevant work as a recycle laborer, as plaintiff actually
6    performed that job, and a warehouse supervisor, as that job is described by the DOT. AR 22.

7    Plaintiff first contends that his recycle laborer job did not constitute substantial gainful
8    activity (and thus could not be considered past relevant work) because plaintiff's monthly
9    earnings averaged less than $1,000. ECF No. 16-1 at 14.

10   Plaintiff's work history report shows that he worked as a recycler sorter from August to
11   mid-December 2011. AR 222. The record indicates that plaintiff earned a total of $3,502.15
12   during his tenure at this job. *See id*. at 22 (identifying recycler sorter as only job during 2011),
13   190 (showing $3,502.25 total earnings for 2011). This evidence demonstrates that plaintiff's
14   monthly income for this position averaged less than $1,000 a month. However, the monthly
15   substantial gainful activity amount designated by the Social Security Administration for work
16   performed in 2011 by a non-blind individual was $1,000. *See* Soc. Sec. Admin, *Substantial*
17   *Gainful Activity*, https://www.ssa.gov/OACT/COLA/sga.html (last visited Mar. 14, 2016).

18   As plaintiff's average monthly earnings were below the monthly substantial gainful
19   amounts, the ALJ was required to identify "substantial evidence, aside from earnings, that the
20   claimant has engaged in substantial gainful activity.'" *Montoya*, 649 F. App'x at 431. The ALJ,
21   however, provided no explanation for his finding that plaintiff's work as a recycle laborer
22   constituted substantial gainful activity, and consequently this finding is not supported by
23   substantial evidence.[3] *See Brown–Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("A clear
24   statement of the agency's reasoning is necessary because we can affirm the agency's decision to
25   deny benefits only on the grounds invoked by the agency.").
26   /////

---

[3] If the ALJ by implication concluded that the amount of earnings from this job is per se substantial gainful work activity, that conclusion is clearly erroneous.

Plaintiff also contends that the ALJ erroneously found that his past relevant work included a warehouse supervisor position. ECF No. 16-1 at 14. Plaintiff argues that his prior warehouse work required him to spend most of the workday "on his feet, reaching, lifting, and carrying stock." *Id*. He argues that the position he performed was "actually a lead worker," not a warehouse supervisor. Thus, he contends that substantial evidence does not support the ALJ's finding that he his past relevant work includes the position of warehouse supervisor. *Id*. The Commissioner contends that plaintiff's own description of his prior warehouse work and the VE's testimony belies plaintiff's argument. ECF No. 21 at 9.

Plaintiff reported in his work history report that he worked as a "warehouse supervisor" from 2007 through 2009. AR 222. While he used the title of supervisor, he also provided details as to the nature of the work he performed and those details are descriptive of a lead worker. He described the job duties as "pulling orders" and inventorying stock. *Id*. at 226. He also indicated that the job required him to use machines and equipment and to frequently lift items weighing 50 pounds or more. *Id*. He also reported that he spent four hours a day supervising 10 employees. *Id*. At his administrative hearing, plaintiff confirmed that he worked as a "warehouse as a supervisor," and that he was responsible for reviewing and hiring employees. *Id*. at 38, 57. He also testified that the position required him to operate a forklift. *Id*. at 57.

Based on testimony from a vocational expert, the ALJ determined that plaintiff could perform prior work as a warehouse supervisor, as that position is described by the DOT. However, the DOT describes the warehouse supervisor as a purely supervisory position with only light work. *See* Stock Supervisor, DOT 222.137–034, 1991 WL 672071 (describing the job as involving planning, supervising, advising and coordinating the activities of other workers; reviewing records; and requiring an ability to exert "up to 20 pounds of force occasionally . . . and/or up to 10 pounds of force frequently."). Plaintiff's warehouse job, as he described it, was not a purely supervisory position. Plaintiff reported that he worked 8 hours a day, but only spent half of those hours supervising others. AR 226. While he indicated that he was responsible for hiring employees and drafting reports, he also reported that the job entailed pulling orders,

/////

1  inventorying stock, using machines and equipment, and frequently lifting and carrying items
2  weighing more than 50 pounds. *Id*.

3  Thus, plaintiff's position, as actually performed, involved not only elements of the
4  warehouse supervisor position, but also significant duties involving substantial labor that are not
5  included in the DOT's description. Because plaintiff's warehouse job involved elements from
6  two or more occupations, it is considered a "composite job." *Valencia v. Heckler*, 751 F.2d 1082,
7  1086 (9th Cir. 1985); *see also Lee v. Astrue*, 2012 WL 3637637, at *5 (W.D. Wash. July, 26,
8  2012) (finding that plaintiff's position as "warehouse supervisor" was a composite job based on
9  plaintiff describing "the position as involving substantial labor in addition to his obligation to
10 supervise ten to eleven other workers."). "When a job is 'composite'—that is, it has significant
11 elements of two or more occupations and therefore has no counterpart in the DOT—the ALJ
12 considers only whether the claimant can perform his past relevant work as actually performed."
13 *Cook v. Colvin*, 2015 WL 162953, at *7 (C.D. Cal. Jan. 13, 2015) (citing Program Operations
14 Manual System (POMS) DI 25005.020(B), available at http://policy.ssa.gov/poms.nsf/lnx/
15 0425005020).

16 The ALJ found that plaintiff could perform his past work as a warehouse supervisor, but
17 only as that position is described in the DOT. AR. 22. Since plaintiff's warehouse position was a
18 composite job having no counterpart in the DOT, the ALJ could only consider whether plaintiff
19 could perform the position as it was actually performed, which he failed to do. Accordingly,
20 substantial evidence does not support the ALJ's finding that plaintiff could perform past relevant
21 work as a warehouse supervisor.

22 As the ALJ's step-four finding is not supported by substantial evidence, the matter must
23 be remanded for further proceedings.

24 IV.    CONCLUSION

25 Accordingly, it is hereby ORDERED that:

26 1. The September 1, 2016 order to show cause is discharged and no sanctions are
27 imposed;

28 2. Plaintiff's motion for summary judgment is granted;

13

3. The Commissioner's cross-motion for summary judgment is denied;

4. The matter is remanded for further proceedings consistent with this order; and

5. The Clerk is directed to enter judgment in plaintiff's favor.

DATED: March 21, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE